Case number 21-3977, Danielle Forman et al. versus Trihealth Incorporated et al. Oral argument is not to exceed 15 minutes per side. Mr. Kaplan for the appellants. Good morning. Good morning, your honors, and may it please the court. Chief Judge Sutton, Judge Kepledge, and Judge Raylert. My name is Ben Kaplan, representing plaintiff appellants, Danielle Forman, Nicole George, and Cindy Haney, and with the court's permission, I would like to reserve five minutes for rebuttal. Thank you. Your honors, the district court here improperly dismissed plaintiff's amended complaint for the breach of defendant's fiduciary duties under the Employment Retirement Income Security Act. That decision should be reversed and remanded for further proceedings. First, the district court simply didn't follow Rule 8 standards. As your honors are well aware, Rule 8 requires simply a... So can we move past Rule 8, which I do think we've got a pretty good handle on. Certainly. We have the common spirit decision, and that seems to take on... There are quite a few different themes in the complaint, I guess is the way I would put it, and I'm trying to figure out if I'm capturing them all. One of them is an active-passive, that that by itself creates imprudence, and common spirit is not friendly to that idea. Then there's the, hey, we have a bad performance relative to others, and common spirit is not very friendly to that, unless you've got something fairly extreme. Then we have what really seems to be featured in your reply brief, which is the institutional retail class distinction, which I don't think common takes that on. The thing I'm just a little curious about is you refer to institutional retail, but I don't really see those words in the complaint. Do you have that theory in the complaint is what I'm getting at. Yes, your honor. It's even broader than simply retail and institutional shares. It's just a share class issue. That's highlighted in paragraph 31 of the complaint. Tell us precisely what you mean by that. Share classes, your honor. There's a retail institutional, those are terms of art in the industry. There's also a little bit broader, simply share classes. That's if you were to think about it as a bulk purchase discount. Here it's alleged that the share classes that were in the fund lineup were simply more expensive than other share classes of the same fund that were available to the defendant for years. To take an index fund example, you theoretically could have an S&P 500 where one of them is 12 basis points and one is 20 and everything else is the same? That's correct. That's as alleged. The critiques that you'll find through a lot of these cases is the failure to allege meaningful benchmarks where you see the apples to apples versus apples to oranges issues. Here it's alleged that the funds are identical. They have the same holdings. They have the same restrictions. The only difference is the fee. Taken as true as it is. Maybe you've partly answered this, but I just am too dimwitted to understand it. I'm surprised you didn't use phrases like institutional versus retail. You started out by saying, well, I think politely trying to correct me that that's not necessarily how you should refer to it. Can you just explain what you mean by that? You just used the phrase volume discount. That maps on very easily in my head to institutional versus retail. I'm just trying to figure out why you didn't use those terms. It makes me fear I'm not quite understanding what's going on. I think you are. To respond to everything other than the dimwitted comment, your honor. I think you are understanding it properly. The complaint is not cabined solely to the terms of art of retail and institutional share. It's simply share classes, which are a little bit, there are more gradations than simply retail and institutional. That's all I was suggesting to clarify. Is the first chart in your complaint meant to capture this theory? Correct. Correct. That's the 17 classes and you're saying how is it that same team, same investment strategy, same portfolio could have different fee structure. Precisely. The harm or the alleged injury is just comparing the plan three year annualized return with the last column. Is that we're supposed to infer that because the return was always higher when the basis points were lower that your client was injured? Yes, your honor. I apologize. Yes, the return will necessarily be lower because of the higher basis points and the identical holdings. Well, as you go down the chart, the variance gets smaller. When you're on the Vanguard fund, you had a 1.9% return versus 1.91% return. How do you explain some of them having a wider variance than this one has? It's basically meaningless, basically the same. Your honor, I understand that the variances do get quite small in terms of basis points. We do push back on the notion that even small variances in the fees still wouldn't constitute a breach of the fiduciary duty with the participant's money. As Chief Judge Sutton noted in common spirit, even seemingly small variances do add up over time. Nonetheless, to your question, the lower returns will necessarily flow from the higher basis points charged. The fact that even that Vanguard fund that your honor is referring to, the cheaper share class wasn't taken, was not utilized, is simply further evidence that permits the court to reasonably infer an imprudent process. I had bought into Judge Sutton's labeling too of retail and institutional. I know you've changed those terms a bit, but is it fair to say then that in the chart, the plans with the higher basis fee, those are the ones that your friends on the other side or the MECAS would say include some other services that back to the plan, record keeping, revenue sharing or profit sharing. Do you dispute, do you concede that those are probably features of those plans, but that doesn't matter for the purpose of 12v6, or do you dispute that those are even features of the plans that you list first in the chart? The latter, your honor. If you're referring to the amicus from our friends at the Chamber of Commerce that imply that often the revenue sharing is a feature of those, retail shares, we do dispute that. That's just simply not in the record at this point. As the Ninth Circuit just held in Kong v. Trader Joe's, even if that were to be a discussion in the complaint, in the briefing, it's simply hypothetical at this point as well, and that's not a basis to dismiss the complaint. But there's no evidence either way, and the silence from the defendant on that issue, which is often a part of the briefing on Rule 12 motions on this, the silence from the defendant on the issue speaks loudly as well. Can I follow up on Judge Radler's question and just keep pushing in the same direction? So let's just compare this theory with a separate theory. So a separate theory is, gosh, I don't understand why the management fees for this fund are 60 and the other one are 40. Now, they're different. Okay, so this is not the same situation. But in that setting, we demand valid comparators, right? So we're pretty, right or wrong, that's what we've been doing. We can't say you just state a claim by saying a difference in fees. You got to show that it's apples to apples, right? So that's what we do in that world. What I take Judge Radler's question to be is, why doesn't the claimant have the same burden in this setting? In other words, I don't care that they're both S&P 500 index fund, same team, same investments. You have to show that you have to plead on top of that, that the expensive one doesn't offer some services in connection with the higher fee. Do you understand what I'm saying? I'm basically taking Judge Radler's question and comparing it to this other line of cases. Well, what do we do with that coin? Well, first, I think I know where you're going with that. Yes. Why isn't that heightened burden upon plaintiffs? Well, I don't mean a heightened burden. I'm just saying, we all agree it has to be apples to apples. And this is just another variation on the apples to apples point that you management team, same services. You should have to say same services. And if you don't say same services, we're back to an apples to oranges problem. Understood. Well, first, Your Honor, we do allege that the funds are otherwise identical. So the complaint, as stated, does encompass that by saying that the only difference is the fee. Further, and if I may continue to answer your question, my time is up. Yeah. That's, that's not the standard that's been followed by the second or your sister circuits in the second and third and eighth and ninth. And it also speaks to a bit of the lack of transparency that plaintiffs have at this point. Because it's a prudent, you know, the duty of prudence is a process based evaluation often. And at this stage, plaintiffs aren't privy to a lot of that process. And a lot of those financial specifics, the circumstantial factual allegations are what permit the court to reasonably infer the imprudence. So I would say that that part would respond to Your Honor's concerns about even if we had not alleged that the funds were might be beyond the scope of what plaintiffs can factually allege at this stage. Well, that's helpful. What I'm going to do is kind of restate this point. It's now I'm saying something friendly. And if you disagree with me, it would be surprising, but I'm really doing this to try to set up a question for Miss Mitchell. Maybe another way of trying to capture the differences in performance, it's not really a plausible theory of imprudence. When the defendant can come back and say, well, gosh, one's actively managed, one's passively managed, or one had this objective, the other had this objective, it's just not plausible to say there's an imprudence problem. Whereas it isn't, it's more plausible, it's closer to the line of plausibility to say same fund, same strategy, everything's the same. And you do say everything's the same, except fees. That's not implausible, even though there may be a very easy defense that I guess you would say comes out in discovery or doesn't come out in discovery. So why don't we, I really, if I could go right to Miss Mitchell with that question, and just start right there. I mean, I guess we had some wonderful opening, go for it. But if you could circle back to this, I'd appreciate it. Sure, good morning, Your Honors. Jennifer Mitchell on behalf of Tri-Health and the plan committee. And I agree with you, Your Honor, that the common spirit case, in which, as you may recall, I was also involved, is one that I think we look to here in the court's ruling there, because the way that this complaint has been alleged doesn't provide, didn't provide the district court with that apples-to-apples comparison that you're talking about here. And I think the court said it really well in common spirit when it said, just because two funds are sponsored by the same company, managed by the same team, and use similar allocation investment types does not make them appropriate comparators. But that just takes you right up to the edge of their theory, at least on this first chart, that this is the same investment strategy, and in fact, it's the same holdings. That's what I take them to be saying, and yet all of a sudden you have this difference in fees. Why isn't that a plausible claim of imprudence? So again, Your Honor, I think here, first of all, that's not what they alleged originally in their complaint. If you look at their complaint, their amended complaint, well, if you look at the original complaint, it's an entirely different theory, but we'll take their amended complaint, which replaced different funds from their original complaint, and they flipped over to this comparator theory, but they never alleged that these were identical, all the fees, until their briefing to this court. And so I think part of the issue is that while they have some allegations that say that they are essentially the same, the complaint itself isn't really premised on that theory. If we construe the complaint actually to say that sufficiently, that these shares were identical in this respect, would that then state a claim? I don't believe that it would, Your Honor, because again, this total fee theory that hasn't been adopted by any court that we could find- Well, I mean, I guess we're wondering why shouldn't we adopt it? If everything, in fact, is equal, everything, as Mr. Kaplan said, except the fees, why shouldn't we say that those are comparators, it's apples to apples, and you had a duty not to let people kind of stumble into those unnecessary costs? We need to also look at the scope of the services relating to those fees, and I think that's critical, and that is a differential factor that makes the argument that they're espousing here fail at this point, because they're not talking about what those fees represented or what the scope of the services provided by those fees entailed. So in addition to they're not providing all the things the district court identified, no meaningful benchmark- So Ms. Mitchell, I'm looking at paragraph 31, so this is the amended complaint, and paragraph 31, the last line, so it's page 11, if that's helpful, but it says the only difference. So you might say, guys, you could have been more specific about saying the services were identical, but they do, after saying same investments, same restrictions concerning deposits and withdrawal, you know, they already lay out a sameness point, and then they say the only difference between share classes was that the lower cost share classes were available only to plans that had large investments, i.e., you know, T. Rowe Price or Vanguard, but somehow Tri-Health, with 200 million in assets, didn't get it. So why, I mean, you know, I mean, I don't want to be unfair to you as an advocate, but part of me just says, why are you worried about this? I mean, if it survives 12 v. 6, as having been pled, it's pretty easy to establish in discovery that there were actually different services, as opposed to just botching it and not realizing they had this option, and if they're not different services, why then the claimants have a pretty good theory, but why, I don't know, it just seems to me in the context with common spirit being out there, you know, it really narrows the range of imprudence claims, but I guess I'm somewhat open to the idea that if it's exactly the same and the fees are different, that seems odd to me. But there, Your Honor, I think that's the point. They're not exactly the same. They're talking about the holdings. But how can you prove that? They say the only difference. That's saying this exact point in the opposite way, and I don't think that's extravagant to construe the complaint to be stating that theory. Why is, I just don't see the problem with it. And if you look at the pleading standard and it felt humbly in the, just to say it's the same without any specificity as to the nature of the, what they're saying is identical, I think is problematic. They've got no addition, they just say that it is. It's a legal conclusion that courts should construe factual allegations. But the comparison, they're really just saying that it is the only, and without any specificity, I think fails on the pleading standard. And I think that's what the district court said. They said they did not provide any comparison to TRO price. I mean, in my overly simplified mind, it's as if you're complaining, why didn't you go to Sam's Club instead of Whole Foods to buy the groceries this week? It was basically the same thing. You bought the same type of apple. You just chose to pay 10 cents more per apple. And aren't they allowed to say that's improved? Well, there's a lot. I started last month, you went to Costco and bought the same apple, but you didn't use your discount card when you bought the apple at Costco. They want the discount card. If we're going to use the Costco example, I think too, there are different types of number of benefits and other things that go into that, that might make it different depending- Well, might make it different. The level of customer service that you receive at Costco versus Kroger versus Whole Foods. Well, might make it different. One, it's sort of your obligation to point that out, I think, because otherwise the fact it might make it different, we can construe the complaint favorably to the plaintiff and say those differences may not make a difference. At least at this stage. Well, I think at this stage that they had to allege the comparators. And if you look at the, I think what the district court was saying too here is that they did not provide that apples comparison here. They provided, they did not provide the meaningful benchmark that it would be required. And that on the whole- These funds all have the same names, right? Janice Henderson Balanced T, or Jet Balanced T, Janice Henderson Balanced, Hero Price 2005, Hero Price 2005. I mean, they have the same names. Are you saying that those are different collection of assets or there were different investment strategies for those funds or different things were purchased or- Different services. The holdings were the same. The holdings, but if you look at it, if your issue is fees, we need a fee benchmark as well. So I think that if you look at what they've alleged here, they've not done what they needed to in order to stay the claim. And the district court and this court in common spirit, I think are those decisions and those holdings. If you also look at Hecker and Loomis, the cases that were cited, this theory that they've espoused has been rejected with respect to just saying, okay, because they're all the same except for the fee, the cost, and then plumbing it all together into this bucket of costs and not showing the differential services that were provided is not enough to pass muster. How about this question? Let's just say, is there a way to state this claim? That's what I'm curious. I mean, so it's all about volume discount. Would you agree that if the complaint said, listen, it's the exact same service, there's no difference in revenue sharing. Everything is exactly the same, except they didn't ask for the volume discount. I take it you would agree that does state a cognizable imprudence claim. I think it gets closer to the market. I think that in order to stay the claim that survives the motion. What's left? I just said, everything's the same. It's apples to apples at every turn. The only difference is they didn't ask for the volume discount. Isn't that state an imprudence claim, even if the difference is five basis points a year? I don't think so, your honor, because I think that you also have to allege that the process of the committee was flawed. I know he touched on that a little bit, but there are also other things that go into it, such as the revenue sharing as he referenced and as referenced in briefings. What like plans did, these like plans did in negotiating fees. If you look at the snapshots that they're looking at also in making these comparisons, I think that those are insufficient. If you look at the whole, there are a lot of things that haven't been alleged as touched upon in common spirit and in all of the other cases followed by this court in common What do you think of the Davis decision? I think it's Davis, Judge Strauss. Is that just a, well, I guess I'll not invent a phrase in apples to oranges comparison in terms of cases or is it, I mean, it seemed, it seemed right to me. Did you not think it was right? The most recent Davis decision, your honor? This is the eighth circuit decision. I think it's called Davis written by Judge Strauss. It's from 2020. Well, it's, it's okay. I, I'm sorry. I didn't mean to just randomly ask you about a case, but I, I think there was a more recent Davis decision that came out, your honor, in April. I thought that was the ones that you were referring. What about the one from 2020? I mean, you just, I appreciate what judge Sutton saying, but you opened up by saying no court had done anything like what we're being asked to do. And I thought the Davis case was pretty close to our case here. So how is it different? Okay. Let's say it's okay. Let's let's, we can, uh, we'll read the cases and them, but go, go ahead with any other points you wanted us to make sure we understood. Sure. Your honor. So just to go back around to, you know, the, the complainant's allegations, it's deficiencies in the trial court's reasoning. I think with sound, you know, it does not require a particular outcome. It doesn't say you have to have the best investment or the cheapest. You just have to have a proven path. And this court said in this court said in common spirit, as did the court in Hughes, but there are a range of reasonable judgment judgments of fiduciary may make, um, a side-by-side comparison. Isn't that then a substantive standard as opposed to the process kind of focus standard that you were, uh, advocating or suggesting earlier? The range of reasonable judgments, like, you know, a reasonable person, even giving some deference, you know, would, would say, okay, this plan is a good option. But if this plan just has nothing to offer compared to the other one, other than excess costs, how is that a reasonable judgment that the fiduciary can make? Okay. So if there was nothing else to offer other than excess costs, I think that is, that is a different point. And I would tend to, uh, agree with you to a certain degree, except that here, that's not the case. And that's not been established in the complaint to a point where you can make that conclusion, uh, that the only difference is the cost. And again, they're making a legal conclusion, not a factual conclusion. They've not put any level of specificity into their pleadings with respect to that. They're just saying we picked this fund. It's the only difference is cost. And then, but they're not even drilling down into the benefits of those costs, that the time periods over which those costs are assessed, the services provided associated with those and the different investment strategies that might go into why you would choose the more expensive versus the least, the less expensive. So I guess just in conclusion, your honors, we think that the district court got it right. We think that, um, under the standard that, you know, the use of hindsight also is improper in this context where really we're looking at whether or not the conduct was prudent at the time that the decision-making occurred. We would state that it was, we would state that the claim fails to state a claim, um, that the court did conduct a context-specific scrutiny as called for by Tibble and affirmed in Hughes, um, that Judge McFarland got it right in concluding that the allegations in the complaint were meritless goods or, or, and not plausible sheep and appropriately dismissed. Um, I think that if you're looking at one year in a buck and in a vacuum, this 2017 year and saying this one year and these results should, should somehow give rise to this claim. Um, I think it's a stretch, especially given that the cases like Hecker and Loomis, this court's decision in common spirit, although the other way. Thank you. All right. Thank you, Ms. Mitchell. Um, and Mr. Kaplan, you've got your rebuttal. Thank you, your honors. Just to briefly respond to a few points. Um, all of your sister circuits agree with the share class violation claim. The second circuit in, I believe it's pronounced Sacerdote. Um, the third and sweat, uh, uh, Kong, Betrayed or Joe's, uh, Brayden, Tibble, um, the DOL and DOJ's amicus and Hughes, um, for the precisely the reasons that your honors were, were just discussing. Um, the potential caveat here is the seventh circuit and that's the Hecker and Loomis, uh, case cases. Um, but your honors, those cases are different because first they rely on essentially a so-called safe Harbor defense, whereas long as, uh, many, many options, including low cost options are provided to the participants that issues with institutional versus retail or various share class issues. Those, those don't rise to a claim because participants had other options that were very reasonably priced. Uh, Hughes rejects that line of reasoning, um, as the, I believe it's the DOL points out in their letter to the seventh circuit on remand. Um, because it says that every fund choice needs to be evaluated and every choice needs to be prudent. I don't think you mentioned Davis in the cases you listed. Was that an oversight or is there some reason just to be candid with the court that Davis is a different animal than what you're asking us to do? Sure. The Davis, uh, the, uh, the univer, uh, Washington university of St. Louis, I, I would imagine, honestly, your honor, that that's an oversight. Um, it had some parts of it that I'm not sure are helpful to you. It had some helpful parts and not so helpful parts. Yeah. Well then I'm, then I'll double down on saying it was an oversight, but no, I, um, no, the, um, I think the most helpful case for your honors to look at, um, the most helpful cases would be the Sacredote and the con case. Um, the con case was handled at the pleading stage and, um, they are the amended complaint, uh, discussed in detail the revenue sharing issue. So that was, that was, uh, a heavy topic of conversation at the motion to dismiss briefing and the ninth circuit reversed that dismissal and said essentially that that's all fine in the hypothetical, but the plaintiffs allege harm from the share class violation. And that suffices. Um, in here, you know, we don't even have that revenue sharing conversation and the motion to dismiss briefing. So that's really not an issue yet. Um, is there anything that a defendant could say in one of these cases that would lead to dismissal? In other words, if, as long as you say there were two funds, they bought the same, uh, securities made the same investments, but one had higher fees than the other, that by itself will always get over the 12B6 hurdle. Um, if, if we're, if the allegations are factually accurate, supportable, I mean, if those were actually the fund choices and the fund was big enough to buy into the bulk discount at Costco, then yes, that states a claim your honor. There's nothing that the defendants could say, record keeping, cost sharing, uh, nothing that would, would overcome that. No circumstance. Well, I, I suppose it may be possible to substantiate via some publicly available documents that the revenue sharing more than compensated. I'm not sure. I don't believe, I don't believe we've seen anything like that, your honor. And in fact, in the Sacredote case, um, they, uh, their, their case went to trial and verdict was rendered on behalf of the defendant and the second circuit still reversed and said, well, sure that they, the, the, the verdict was rendered on behalf of the defendant on the revenue sharing piece that your honor is just talking about. Um, but the share class violation still shouldn't have been dismissed, um, because it states a claim as facts, um, well, you know, accepted to be true and all reasonable inferences therefrom. So, uh, you know, I'm, I'm hemming and hawing a little bit on it, uh, judge Riddler, but I, I believe that will state a claim, uh, unless the defendant can show that there's some, um, you know, factual inaccuracy with the holdings as alleged or the funds that were available. Um, just because it really is, your honor, in many ways, it's the lowest hanging fruit. You know, it's, you're at, like you said, you're, you're at line that you're, you're checking out at Costco and they ask if you want the discount and you say no. And, um, you know, that, that that raises it from more than just a plausibility to a probability of imprudence. Um, and I see that my time is just about up, but I'm happy to field any other questions that your honors have. No, I think, I think we're fine. I really appreciate your helpful briefs and as always, uh, answering our questions. Um, thanks so much. And, uh, the case will be submitted and the clerk may adjourn court in its own way. Thank you.